UNITED STATES DISTRICT COURT OF MASSACHUSETTS

Civil Action No. __________

**MAN AGAINST XTINCTION** as *Citizen Attorney General*

v.

COSCO CONTAINER LINES AMERIKA, INC. as *Defendant*

CMA CGM (AMERICA) LLC as *Defendant*

MEDITERRANEAN SHIPPING COMPANY (USA) INC. as *Defendant*

13 June 2022

---

VERIFIED COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF AND REQUEST FOR A JURY TRIAL

---

1. This is a Public Interest enforcement action — brought pursuant to the "citizen attorney general" provision of Section 11(g) the Endangered Species Act ("ESA"). **FN1** Citizen Attorney General Man Against Xtinction ("M. A. X.") is prosecuting the commercial Defendants in the name of the People of the United States to stop the shipping activities conducted in concert by the Defendants as business partners in Massachusetts Bay ("Defendants' Shipping Activity") that constitutes prohibited conduct under the ESA's Section 9 take prohibitions of ESA Listed Species of whales and sea turtles. The Defendants Shipping Activity routinely kills injures, harasses and "harms" (i. e. alteration of ESA protected habitat) ESA Listed Species of whales ("Endangered Whales"). **FN2** The Defendants' Shipping Activity itself now constitutes in itself a *per se* prohibited taking of ESA Listed Species of whales under Section 9 of the Endangered Species Act (ESA) from its past, ongoing and future prohibited taking of endangered whales. **FN3** The

---

[1] 16 USC 1540(g)

[2] "Endangered Whales" includes: (1) The Sei Whale, *Balaenoptera borealis*; (2) The Northern Right Whale also known as the Northern Black Whale (*Eubalaena glacialis*: (3) The Humpback Whale *Megaptera novaeangliae*; (4) The Fin Whale *Balaenoptera physalus*: and (5) The Blue Whale, *Balaenoptera musculus*.

[3] ESA Section 9(a) at 16 USC 1538(a):[I]t is unlawful for any person subject to the jurisdiction of the United States to ... (B) take any such species within the United States or the territorial sea of the United States; (C) take any such species upon the high seas; or (G) violate any regulation pertaining

Defendants Shipping Activity is conducted in US coastal waters that are listed under the ESA as designated critical habitat for the Northern Black Whale species in Massachusetts. **FN4. See Figure #2.** The operation of the vessels of the Defendants' Shipping Activity in Massachusetts Bay constitutes an ESA prohibited taking of these whales by "harm" by their physically altering the ESA critical habitat for the Black Whale that kills the whales and interferes with the breeding and feeding of these whales. The Defendants Shipping Activity as a result of its causing historical prohibited takings of ESA Listed Species of whales is now on its own a *per se* ESA Section 9 prohibited "taking" of ESA Listed Species of whales.

2. The Defendants make money together from mutually engaging in their Shipping Activity business. Large ships owned, operated, and serviced by the Defendants repeatedly travel throughout the year along established international shipping lanes that cross ESA listed designated Critical Habitat for the Black Whale off the Massachusetts coastline. The Defendants' Shipping Activity's transiting of large vessels in the shipping lanes crossing Black Whale Critical Habitat to do so for only one exclusive purpose -- to get to Massachusetts Port Authority's ("Massport") facilities in Boston Harbor in order to transfer cargo on and off the Defendants' ships to and from warehouses owned by Massport. Massport has a critical participation in the Shipping Activity supplies docking and cargo transfer operations for the exclusive use by the Defendants.

3. It is scientifically demonstrated that shipping and fishing activity off the US Atlantic coastline are the greatest anthropogenic sources of death and injury to these whale species, and their essential marine coastal habitat. NOAA has officially determined that the Northern Black Whale population is declining owing in part to its members ongoing killing and injuring by the Defendants Shipping Activity and commercial fisheries off the Massachusetts coastline. **FN5**

4. The Shipping Activity requires the Defendants' large vessels to cross Black Whale Critical Habitat throughout the year. The Defendants large vessels in doing so routinely strike, kill and/or injure ESA Listed Species of whales. The Defendants' Shipping Activity by itself adversely alters Black Whale Critical Habitat which is a prohibited taking under the ESA by what it terms "harm." The US Fish and Wildlife Service defines a take by "harm" to be a prohibited "taking" of ESA

---

to such species or to take any threatened species of fish or wildlife listed pursuant to section 4 of this Act and promulgated by the Secretary pursuant to authority provided by this Act.

[4] 50 CFR 226.203 and *Federal Register*, Vol. 81, No. 17, 27 January 2016

[5] Sean A. Hayes, et al. 2018. "North Atlantic Right [Black] Whales - Evaluating Their Recovery Challenges in 2018." **NOAA Technical Memorandum** NMFS-NE-247.

Listed Species of whales that results in the killing of the endangered whales by adversely impacting the ability of the whale to feed, birth and care for their young. **FN6** Example, the Shipping Activity's chemical and noise pollution of Black Whale Critical Habitat takes by harm the Black Whale species through its killing these whales from its adversely affecting the ability of these whales to feed and breed.

5. NOAA recognizes the danger to Endangered Whales posed by the Defendants Shipping Activity and has adopted rules imposing voluntary speed limits and zones off the US northeast coastline specifically to protect Northern Black Whales from the Defendant's Shipping Activity. **FN7** Also recognizing this danger, the International Maritime Organization moved the shipping lanes crossing Massachusetts Bay and Black Whale critical habitat for the sole purpose of protecting Black Whales from being struck and killed by the large ships operated by the Defendant's Shipping Activity. **FN8**



**Figure #1:** *NOAA's Speed Limit Zones for Black Whales at 50 CFR 224.105*

---

[6] 50 CFR 17.3: "Harm in the definition of "take" in the Act [ESA] means an act which actually kills or injures wildlife. Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering."

[7] 73 FR 60173, 10 October 2008: NOAA's "Final Rule to Implement Speed Restrictions to Reduce the Threat of Ship Collisions With North Atlantic Right Whales."

[8] IMO COLREG.2/Circ.58. 11 December 2006. "International Maritime Organization New and Amended Traffic Separation Schemes in the approach to Boston, Massachusetts (amended scheme)."

6. As stated, the Shipping Activity irreparably injures ESA Listed Species of endangered whales in other ways than just through ship strikes. The Defendants Shipping Activity causes massive amount of noise and chemical pollution into Northern Black Whale' Critical Habitat that harasses the whales and interferes with intraspecies communication with conspecifics. The noise pollution from the Shipping Activity greatly prevents whales from effectively communicating with each other and their navigation from breeding to feeding grounds. It also interferes with their ability to find food and induces considerable amount of physiological stress in each afflicted whale. **FN9** The noise pollution caused by the Defendants' Shipping activity in Black Whale Critical Habitat constitutes a ESA Section prohibited taking of Endangered Whales.

**Figure #2**: *Northern Black Whale ESA Listed Critical Habitat at 50 CMR 226.203*

7. M. A. X. petitions the Court to immediately enjoin the Defendants Shipping Activity in Black Whale Critical Habitat and off the Massachusetts coast in a manner that will prevent it causing further irreparable injury to ESA Listed Species of endangered whales. This includes but not exclusively the Court insuring the ability of ESA Listed Species to increase in number in order to recover from their biological endangered status.

8. M.A. X. is asking the Court for a permanent injunction against the Defendants that will stop the Defendants' Shipping Activity from --

---

[9] Aaron Rice, *et al.* 2012. "Acoustically Detected Year-Round Presence of Right Whales in an Urbanized Migration Corridor." *Conservation Biology*. 26:4(698–707). DOI: 10.1111/j.1523-1739.2012.01866.x

a.  Transiting across Northern Black Whale Critical Habitat between 1 February of each yer until 1 June 2022 of each year in order to prevent members of any ESA Listed Species of whales from being injured and killed by the Shipping Activity. .

b.  Transiting across Northern Black Whale Critical Habitat at any time if any ESA Listed Species of whales or Humpback Whales are reported sighted near the shipping lanes crossing Black Whale Critica Habitat or anywhere in Boston Harbor. .

And a further order --

c.  Requiring the Defendants to implement a program to use to daily track the movement of ESA Listed Species of whales (using remote acoustic and sighting technologies) off the Massachusetts coast in order to manage the Shipping Activity to prevent its future killing and injuring of ESA Listed Species of whales by monitoring for the presence of ESA Listed Species of whales off the Massachusetts coastline on a daily basis in every month of the year.

d.  Comply in a verifiable manner with the voluntary speed limits imposed by NOAA on its Shipping Activity.

9.  The Plaintiff is also seeking compensatory and punitive damages against the Defendants as a public nuisance. He is also asking the Court for a trial by jury.

**Parties**

10. Citizen Attorney General Man Against Xtinction is an association currently comprising just one person, Richard Max Strahan ("Strahan"). Strahan is a citizen of the United States, a conservation biologist, serves as the Chief Science Officer for Whale Safe USA an environmental movement that seeks to implement conservation plans for endangered species of whales and sea turtles. He is also a licensed commercia lobsterpot fisherman in NH and a recreational lobsterpot fisherman in Massachusetts. He is currently being forced to use fisheries practices that are costly and is restricted in his fishing activity by the endangered status of Endangered Whales caused and perpetuated by the Defendants Shipping Activity. His business address is One Washington Street, Suite #3112, Dover NH 03820. .

11. Defendant COSCO Shipping (USA) Inc. ("COSCO") is a state registered foreign corporation doing business in Massachusetts. Its registered agent's address is % Corporation Service Company 84 State Street, Boston 02109.

12. Defendant Mediterranean Shipping Company (USA) Inc. ("MSC INC.") is a state registered foreign corporation doing business in Massachusetts. It's business address is 8 Essex Center Drive Peabody MA 01960. Its registered agent's address is % Corporation Service Company 84 State Street, Boston 02109.

13. Defendant CMA CGM (America) LLC ("CMA-CMG") is a state registered foreign corporation doing business in Massachusetts. Its registered agent's address is % Corporation Service Company 84 State Street, Boston 02109.

**Jurisdiction and Standing**

9. The Court has jurisdiction over the subject matter of this action by virtue of 28 U. S. C. § 1331 (action under the laws of the United States); 16 U. S. C. § 1540(c) (action arising under the ESA); 16 U. S. C. § 1540(g) (citizen suit provision of the ESA) and Declaratory Judgment Act 28 U. S. C. §§ 2201-2202 (power to issue declaratory judgment). Pursuant to § 11(g) of the ESA, the Citizen Attorney General has previously sent written notice to each of the Defendants — and the Secretary of the Department of Commerce and its infra-agency NMFS — informing them of his intent to bring suit against the Defendants if they do not voluntarily stop its said unlawful takings of listed endangered species. Enforcement agents for NOAA and Massachusetts Division of the Environmental Police has informed the Citizen Attorney General that they have no intention of enforcing the MESA/ESAMMPA's take prohibitions against any of the Defendants.

10. The Court has jurisdiction to enforce MMPA's take prohibitions owing to the fact that they are more protective than those of the ESA. The last section of the ESA explicitly requires that the MMPA is to be used to protect the endangered marine mammals over the requirements of the ESA if they are found to be more protective. Since the People can prosecute the Defendantsunder the ESA it follows as a matter of law that they can also prosecute the Defendants for engaging in conduct prohibited by the take prohibitions of the MMPA. **FN10**

11. The Citizen Attorney General is an avid whale watcher, licensed lobsterpot fishermen by the state of Massachusetts and New Hampshire, and a WSUSA professional endangered species recovery agent. The Citizen Attorney General has standing to bring the instant civil action owing to

---

[10] ESA §17 [16 U.S.C. 1543]: "Except as otherwise provided in this Act, no provision of this Act shall take precedence over any more restrictive conflicting provision of the Marine Mammal Protection Act of 1972."

his extended professional history of researching and developing conservation plans for species of Endangered Whales, as a commercial fisher and as a whale watcher. The Supreme Court ruled in that "whale watchers" having standing to bring suits to protect whales from unlawful injury by a private or government defendant. **FN11** Strahan also has standing to bring suit to protect Federally Protected Whales as a "zone of interest" because the protected status of these species causes his commercial lobster pot fishing to be harshly regulated by NMFS and Massachusetts to protect endangered whales. **FN12** If the Defendants killed fewer Endangered Whales, M. A. X. as a lobster pot fishing would not be so harshly regulated by Massachusetts and NMFS to protect these same listed endangered species.

12. This Court has repeatedly found Strahan to have Article III standing to act as a "citizen attorney general" and to bring civil actions under the ESA to enforce the take prohibitions of the ESA in order to protect listed species of Endangered Whales from prohibited takings in the Atlantic Ocean. More than sixty days ago Strahan served the Defendants pursuant to the 60 day notice requirements of 16 U. S. C. § 1540(g) a notice of his intent to bring suit for the claims that he raises in the instant complaint.

## Summary of M. A. X. Claims of Fact and Law Against the Defendants

13. The Defendants — COSCO, CMA-CGM, and MSC INC — has an ongoing contractual relationship with Massport. These contracts authorize and provides each of these shipping companies exclusive and guaranteed access to Massport's port, docking and transportation facilities for the greater Boston area. No other international shipping companies have access to Massport's transportation facilities without their having entered into a prior contractual agreement with Massport for their ships to dock at Massport transportation facilities in the Boston area.

14. In return, COSCO, CMA-CGM and MSC INC ("Shipping Defendants") are contractually bound to have their ships regularly travel to and docks at Massport's transportation facilities in Boston Harbor to unload and take on cargo from their customers. They are contractually barred from using any other competing transportation facility. Cargo is offloaded/onloaded to and from these ships, stored in Massport facilities, and then be transported using Massport transportation facilities to truck, rail and/or air cargo carriers at Massport's Logan Airport facilities. Cargo

---

[11] *Japanese Whaling Association v. American cetacean Society*, 478 U.S. 221 (1986).

[12] *Bennett v. Spear*, 520 U.S. 154 (1997).

transported to Massport by rail, truck and/or as air cargo from Logan Airport will then be stored at Massport's transportation facilities and then loaded onto the ships of the Defendants using Massport transportation facilities. The Shipping Activity's ships will then transit out of Massport's docking facilities and across Black Whale Critical Habitat along the internationally designated shipping channels to other ports in the USA and between nations across the globe.

15. The International Maritime Organization ("IMO") has established shipping lanes for large ships to transit internationally. IMO established shipping lanes transect the Right Whale Critical Habitat in Massachusetts Bay. In every month of the year Northern Right Whales are resident to Massachusetts Bay and can be located at some point in the IMO shipping channels going to and from Boston Harbor that cross Massachusetts Bay.

16. Northern Right Whales are now facing inevitable extinction just from the industrial destruction of the required marine habitat along the coastline of the United States. population is declining. In 2020, the National Marine Fisheries Service issued a report that found that between 2018-2019 – the remaining Right Whale population lost over ten percent of its remaining members – in the span of a single year. There are now less than 380 of these whales left in the entire world. The entire global population of Black Whales live in US coastal waters crossed by the shipping lanes used by the Defendants' Shipping Activity.

17. The Shipping Activity are inflicting irreparable injury on ESA Listed Species of whales by preventing the recovery of their species from its endangered species status. If it were not for the Defendants' Shipping Activity members of these ESA Listed Species of whales would not have been killed and injured in the past by these large ships and will not be struck by these struck, killed and injured by similar large ships in the future.

18. As a direct result and cause, the Defendants continuing and repeated ESA/MMPA prohibited taking of Black Whales and other Endangered Whales has caused these whales to "shrink" in three ways. It has caused the whales to shrink in number. It was caused whales of these species over time to physically shrink in length. It has also caused these species over time to physically shrink in width and overall body weight.

19. Federally Protected Whales are resident species of the northeastern coastline of the United States. They routinely inhabit bays and inlets of northeastern coastal states — including Boston Harbor. Massachusetts has designated Northern Right Whales, Blue Whales, Fin Whales Humpback Whales and Sei Whales as resident native species and listed them as designated endangered wildlife under the Massachusetts Endangered Species Act ("MESA"). As stated, most of Massachusetts

Bay and the Great South Channel has been designated under the ESA as listed critical habitat for the Northern Right Whale. In the Summer of 2006, a Humpback Whale was routinely sighted for a period of months in Boston Harbor near Massport's transportation facility.

20. Ship strikes on Endangered Whales is an increasing problem along the United States coastline. Ship strikes now account for at least half the anthropogenic mortalities inflicted on Endangered Whales. Most Endangered Whales bear numerous scars from being individually struck by ships in the past and barely surviving the encounter. Because the Defendants' ships are large cargo and cruise ships, they easily kill and seriously injure Endangered Whales when they strike them one single time.

21. Both Northern Black Whales and Humpback Whales species have been both designated by the National Oceanic and Atmospheric Agency ("NOAA") to be experiencing in 2021 an ongoing "Unusual Mortality Event" ("UME"). This means that members of these species are dying in numbers exceeding greatly what is expected from just natural causes. A UME constitutes an emergency crisis situation for these Endangered Whales under the provisions of the MMPA. Many of these UME mortalities are caused by the Defendants' Shipping Activity in Black Whale Critical Habitat.

22. In June 2020, NOAA published a report extolling the ongoing killing and injuring of Right Whales by Defendants' Shipping Activity in Black Whale Critical Habitat. **FN13** There is no question that the Defendants and other cargo and passenger ships currently transiting through Black Whale Critical Habitat do so directly in response to the Masssport's contractual relation with them to provide transportation services.

23. If the Defendants' Shipping Activity were not transiting in the shipping lanes crossing Massachusetts Bay, the Gulf of Maine and the Great South Channel Endangered Whales would not be struck by its large ships. Endangered Whales along the northeastern U. S. coastline would face a significant decrease in their chances of being struck by a ship if the Defendants Shipping Activity were suddenly stopped or were conducted in a manner that is Whale Safe — including if the Defendants' ships must observe a 10 Kt speed limit when approaching within 30 miles of the Port of Boston.

---

[13] June 2020. "North Atlantic Right Whale (*Eubalaena glacialis*) Vessel Speed Rule Assessment." NOAA Fisheries' Office of Protected Resources. Last retrieved January 2021 (https://media.fisheries.noaa.gov/2021-01/FINAL_NARW_Vessel_Speed_Rule_Report_Jun_2020 .pdf?null).

24. The Defendants' Shipping Activity is causing in part the decline of size of the Black Whale's remaining population on Earth. The Defendants' Shipping Activity is directly causing a permanent & greater likelihood of extinction for the Northern Black Whale species. **FN14** Causing an enhanced extinction threat is a violation of § 9(a and g) of the ESA and the MMPA.

25. Upon information and belief the Defendants have NOT been issued any permit by the National Marine Fisheries Service ("NMFS") to allow it to lawfully take ESA Listed Species of whale. Section 10 of the ESA provides for the issuing of permits to immunize state agencies and corporations from any ESA § 9 liability resulting from the Defendants Shipping Activity.

26. Federally Protected Whales are now regularly struck by ships along the United States coastline.Endangered Whales face a significant threat of being struck by ships when they inhabit areas where there is significant ship traffic. For example, ships operated by Coast Guard routinely strike and killEndangered Whales in U. S. coastal waters. **FN15** A Sei Whale was found impaled on a vessel when it docked at a Massport facility in Boston Harbor. In May of 2007, a Humpback Whale was struck and killed by a ship heading to Boston Harbor to use the Massport's Transportation facility. Commercial Whale Watch ships routinely strike and killEndangered Whales. These are a few known examples. Most of the ship strikes caused by the Defendants' Shipping Activity go unreported.

27. Ship strikes on Endangered Whales along the U. S. coastline is such a routine happening that Massachusetts and NOAA has repeatedly acted to reduce the speed of ships operating in New

---

[14] The Defendants' unlawful killings have caused the current remaining populations of these endangered species to be smaller than they would have been had they not been subject to the Defendants' and its business partners engaging in the prohibited causing of the prohibited killing of Endangered Whales The Defendants' Shipping Activity caused a reduction in the size of the surviving populations of Endangered Whales has increased the likelihood of these species going extinct. The Defendants are preventing any possible recovery by these species from their endangered status that they would have achieved already without the Shipping Activity's killing of these whales. The "small population" effect in conservation science asserts that the smaller a population becomes its chances of extinction risees exponentially. Even if the Court enjoins the Defendants from further killings of the said endangered species, the enhanced threat of extinction that the Defendants' created by depleting these populations for years remains and therefore the Defendants' continue to injure the People and its Public Interest.

[15] *Strahan v, Linnon*, 967 F. Supp. 581, 632 (D. Mass. 1997).

England coastal waters to protect Endangered Whales. **FN16** The NMFS has adopted regulations to protect ESA Listed Species of whales from ship strikes that impose speed limits on vessels crossing Black Whale Critical Habitat and in shipping lanes leading to other ports along the US Atlantic coastline. **FN17** NOAA also adopted a regulation prohibiting any vessel from approaching within 500 yards of a Northern Right Whale. **FN18** The state of Massachusetts has done the same. See 322 C. M. R. § 12.00 et seq.

28. In 1998, the United States sought and received International Maritime Organization-endorsement of two Mandatory Ship Reporting (MSR) systems designed to improve mariner awareness about averting ship collisions with the endangered Northern Black Whale (*Eubalaena glacialis*). Vessel collisions are a serious threat to the right whale and the program was among the first formal attempts to reduce this threat. Under the provisions of the MSR, all ships >300 gross tons are required to report their location, speed, and destination to a shore-based station when entering two key right whale habitats: one in waters off New England and one off coastal Georgia and Florida. In return, reporting ships receive an automatically-generated message, delivered directly to the ship's bridge, that provides information about right whale vulnerability to vessel collisions and actions mariners can take to avoid collisions. The MSR has been in operation continuously from July 1999 to the present. Archived incoming reports provided a 15-plus year history of ship operations in these two locations. **FN19**

29. NOAA's current speed rule for large vessels imposes speed limits on these ships heading towards and leaving Boston harbor to use the Defendants' Shipping Activity in order to lessen the chances of a Northern Right Whale being hit by one of these ships. The rule imposes a 10 Kt speed limit zone for ships starting at the entrance of the Port of Boston and extending outwards in a full radius to a distance of thirty miles from the Port of Boston. 71 FR 36299. In in addition NMFS imposes speed limits on large vessels in designated areas it titles as "Seasonal Management Areas"

---

[16] Last retrieved on 22 January 2021 (https://www.fisheries.noaa.gov/national/endangered-species-conservation/reducing-vessel-strikes-north-atlantic-right-whales)

[17] 50 CFR § 224.105

[18] 13 February 1997 **Federal Register**. 62 FR 6729. Last retrieved on 22 January 2021 (https://www.govinfo.gov/content/pkg/FR-1997-02-13/pdf/97-3632.pdf)

[19] 20 November 2001 **Federal Register** at 66 FR 58066 & Greg Silber, et al. 2015. "The right whale mandatory ship reporting system: a retrospective." *Peer J.* doi: 10.7717/peerj.866.

for Right Whales ("SAM"). These SAM's cover extensive areas in Massachusetts Bay going southward to Georges Bank and around Nantucket Island. Additionally NMFS implements emergency "slow zones" that imposes speed limits on large vessels to protect unexpected aggregations of Right Whales. At this time, NMFS has declared a "slow zones" around Nantucket Island to protect a current aggregation of Right Whales located there and that is effective till the end of January 2021.

**Citizen Attorney Generals' Claims Against the Defendants**

COUNT I. Violation of § 9(a) of the Endangered Species Act and § 1372(a) the Marine Mammal Protection Act by the Defendants' Shipping Activity that Causes Prohibited Killing, Injuring and Otherwise Unlawful Taking of ESA Listed Species of Whales.

30. Citizen Attorney General M. A. X. re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 29 of this Complaint.

31. The Defendants' Shipping Activity are currently constitutes on its own continuing and repeating conduct *per se* prohibited by the ESA's § 9(g). The Defendants Shipping Activity has repeatedly caused ESA Listed Species of Whales to be struck, killed and injured by its ships and will continue to do so into the future. **FN20** The ships of the Defendants' Shipping Activity pose a significant threat in the immediate future to repeatedly strike, kill, and injure an Endangered Whale anywhere these whales and ships occupy the same marine habitat. Ships pose a significant threat to strike, kill and injure whales along the northeastern U. S. coastline, NMFS itself claims that this is a fact and has repeatedly attempted to regulate ship traffic to protect whales from being struck by Defendants ships heading into Boston Harbor. Ships striking, killing and injuring Endangered Whales constitutes conduct prohibited by the ESA's § 9(a) and the MMPA's § 1372(a). Since the Defendants Shipping Activity has killed and taken Endangered Whales in the past this same Shipping Activity is now prohibited on its own by the ESA/MMPA's take prohibitions as a per se prohibited taking of ESA Listed Species of whales. Every day that the Defendants now engages in its Shipping Activity it is conducting in ESA Section 9 prohibited taking — whether a Endangered Whale is struck by one of its ships on that day or not.

32. The Northern Black Whale's population is declining in part to the Defendants prohibited taking of by their Shipping Activity. This species is facing imminent extinction. ANY further

---

[20] *Strahan v. Coxe*, 127 F3d 155 (1st Cir 1997).

ESA/MMPA prohibited taking of Northern Black Whales by a single whale being struck by the large vessels of the Defendants will prevent this species ability to recover. Any further ship strikes on Right Whales will inflict irreparable injury on these whales and the Public Interest in them.

33. Unless the Court grants the Citizen Attorney General M. A. X. his requested injunctive relief to stop the Defendants Shipping Activity from striking, killing, and injuring Endagered Whales, it will continue its said prohibited conduct and many more Endangered Whales will be killed and injured by the Defendants which will precipitate these endangered species into an irreversible path to imminent extinction.

COUNT II.  Violation of § 9(a) of the Endangered Species Act: The Defendants Shipping Activity's ESA Prohibited Taking by Harm of ESA Listed Species if Whales through Its Adverse Alteration of Listed Designated Critical Habitat for the Northern Black Whale.

34. Citizen Attorney General M. A. X. re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 33 of this Complaint.

35. The Defendants Shipping Activity in the past and through the foreseeable future constitutes an ESA Section 9 prohibited taking by "harm" of ESA Listed Species of whales. **FN21** The Defendants' Shipping Activity adversely alters the Black Whales ESA listed designated Critical Habitat with noise & chemical pollution from its ship traffic "which actually kills or injures the [Endangered Whale] species by significant habitat modification or degradation."

36. The Defendants' Shipping Activity so floods the Endangered Whales critical habitat with noise from the operation of its ships that Endangered Whales' ability to communicate with each other is fatally impaired. As a result the Endangered Whales ability to engage in successful mating behaviour and sufficient feeding to get adequate nourishment is fatally impaired. It has been scientifically demonstrated that noise pollution from ship traffic and other anthropogenic sources harasses and disturbs the members ESA Listed Species of Whales. Black Whales are known to engage in Surface Active Groups (SAG). The SAG form as a result of whales communicating by their voices calling over tremendously long distances. SAG are vital to the survival of this whale's

---

[21] 50 CFR § 222.102: "Harm in the definition of "take" in the Act means an act which actually kills or injures fish or wildlife. Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering."

species. SAG are the basis for almost all reproductive contacts between males and females. SAG also allows Black Whales to establish important long term social bonds and to be able to find feeding grounds of their zooplankton food source that is shifting daily. SAG formations are impaired by the noise and chemical pollution from the Defendants' Shipping Activity. **FN22**

37. Unless the Court grants M. A. X his requested injunctive relief to stop the Defendants' Shipping Activity from striking, killing, and injuring Endangered Whales, it will continue its Shipping Activity unabated and many more members of ESA Listed Species of whales will be killed and injured by the Defendants, that will precipitate these endangered species into an irreversible path to imminent extinction.

**Claims Under the Court's Supplementary Jurisdiction**

COUNT III. *The Defendants Shipping Activity as a Public Nuisance*

38. M. A. X. re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 37 of this Complaint.

38. The Defendants Shipping Activity constitutes a *per se* violation of federal and state law and as such constitutes a Public Nuisance. The People are suffering recurring and continuing tortious injury from the Defendant's said unlawful activities. The People has also suffered much financial loss inflicted on them by the said unlawful activities of the Defendant. As a commercial fishermen the Defendants' Shipping Activity costing him ongoing losses in time and money as a result of the Endangered Whales being kept from recovering from their biologically endangered status by the Defendants Shipping Activity. As a commercial fisherman M.A.X. has a unique status distinguished from that by other members of the Public.

39. M.A.X. is a state licensed fisher in New Hampshire and in Massachusetts. and a recreational fisher in Massachusetts. asking the Court to award him compensatory damages for the decades of economic loss and the lost ability for him to enjoy the marine environment, that is guaranteed under the Massachusetts Constitution, that is being inflicted on him by the Defendants' Shipping Activity. M.A.X. is also asking the Court for an award of punitive damages against the Defendants. The Defendants negligence has hurt all members of the Public and their ability to enjoy the marine environment. There are fewer whales to be seen on commercial whale watch vessels,

---

[22] 50 CFR § 226.203: 27 February 2016 **Federal Register** 81 FR 4838 – 4874.

kayaks, by swimmers and surfers. The Defendants need to be punished economically in order to put an end to their deliberate destruction of the Public Weal – the wildlife of the Ocean and the coastal marine environment.

PRAYER FOR RELIEF

WHEREFORE the Citizen Attorney General asks the Court for the following relief —

I. For a judgment declaring that the Defendants Shipping Activity itself constitutes a *per se* prohibited conduct pursuant to the ESA Section 9 prohibition on the taking of members of the ESA Listed Species of whales.

II. For an order, enjoining the Defendants from having their ships travel on the shipping lanes crossing Northern Black Whale Critical Habitat from the first day of February through to the first day of June in any calendar year.

III. For an order, requiring The Defendants Shipping Activity to comply with NMFS speed restrictions along the northeast US coastline and its 100/500 yard distance rules for vessels that were issued in order to protect a member of an ESA Listed Species of whale and/or as a MMPA protected species.

IV. For an order enjoining the Defendants Shipping Activity from crossing Black Whale Critical Habitat two days after any time a ESA Listed Species of whale is sighted near or within a shipping channel or anywhere in Boston Harbor.

V. For an award of $100,000.00 in compensatory damages and $1,000,000.00.

VI. For an award of the M. A. X.'s direct costs of prosecution against the Defendants.

VII. For any further relief that the Court deems appropriate.

By:

/s/ Richard Maximus Strahan

_____________________________

Richard Maximus Strahan
Chief Science Officer
Whale Safe USA
617-817-4402

---

VERIFICATION OF THE COMPLAINT

---

I Richard Maximus Strahan verify under the pains and penalties of perjury that all the facts alleged in the above complaint are known to the best of my ability to be true. Signed under the pains and penalties of perjury this ~~22nd of January~~ in the year two thousand and twenty-one. – 13 June 2022

/s/ Richard Maximus Strahan

______________________