UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAN AGAINST XTINCTION, *as Citizen Attorney General*, a/k/a RICHARD MAXIMUS STRAHAN,<br><br>Plaintiff,<br><br>v.<br><br>COSCO CONTAINER LINES AMERIKA, INC., et al.,<br><br>Defendants. | Case No. 22-cv-10722-DJC |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                           May 15, 2023

## I.   Introduction

Plaintiff Richard Maximus Strahan ("Strahan"), who is proceeding *pro se* and identifies himself in the caption of the complaint as "Man Against Xtinction as *Citizen Attorney General*,"[1] has filed this lawsuit against companies that allegedly conduct shipping activities in the Massachusetts Bay: Mediterranean Shipping Company (USA) Inc. ("Mediterranean"), CMA CGM (America) LLC ("CMA"), COSCO Shipping Lines (North America) Inc., and COSCO Shipping (USA) Inc.[2] (collectively, "Defendants"). D. 1 at 5–6. Strahan alleges that Defendants'

---

[1] Although the first page of the complaint identifies the plaintiff as "Man Against Xtinction as *Citizen Attorney General*," the signature line of the complaint and other papers filed by the plaintiff identify Richard Maximus Strahan as the signatory. Because "[a]n action must be prosecuted in the name of the real party in interest," Fed. R. Civ. P. 17(a)(1), Strahan's name is included in the identification of the plaintiff in the case caption and on the docket.

[2] The complaint names "COSCO Container Lines Amerika, Inc." (which may be a misnomer for COSCO Container Lines Americas, Inc., D. 50 at 1 n.1) as a defendant in the case

1

large vessels use shipping lanes in the Massachusetts Bay which cross areas designated as a critical habitat of certain endangered whales.  Id. at 1–2.  Strahan further alleges that Defendants' actions violate the Endangered Species Act ("ESA") (Counts I–II)[3] and constitute a public nuisance (Count III).  Id. at 12–15.  Defendants have each moved for judgment on the pleadings.  D. 61; D. 62; D. 65.  For the foregoing reasons, the Court ALLOWS COSCO's motion, D. 61, ALLOWS CMA's motion, D. 62, and ALLOWS Mediterranean's motion, D. 65, and dismisses the claims.

## II.     Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A Rule 12(c) motion for judgment on the pleadings is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion.  Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006) (citing cases). To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the

---

caption, D. 1 at 1, but elsewhere identifies "COSCO Shipping (USA) Inc." as the defendant.  D. 1 ¶ 11.  The first entity apparently merged into COSCO Shipping Lines (North America) Inc.  D. 50 at 1 n. 1.  While both COSCO Shipping Lines (North America) Inc. and COSCO Shipping (USA) Inc. admit they are distinct corporate entities, their filings in this matter are on behalf of both entities.  D. 50 at 1 n.1.  Accordingly, the Court will refer to both entities collectively as "COSCO" and has considered the motion (and the opposition) as to both entities.

[3] As part of Count I, the complaint alleges that Defendants violated the Marine Mammal Protection Act ("MMPA") by taking endangered whales.  D. 1 at 12.  As Strahan knows from prior litigation, "[t]he MMPA does not authorize citizen suits against a person alleged to be in violation of the Act."  Strahan v. Coxe, 127 F.3d 155, 160 (1st Cir. 1997); see 16 U.S.C. § 1377(a) (stating that "[e]xcept as otherwise provided in this subchapter, the Secretary shall enforce the provisions of this subchapter").  Accordingly, to the extent the complaint sought to raise a claim under the MMPA, that claim fails.

light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom'" in their favor.  Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citation and internal quotation marks omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings, including the answer.  See Aponte-Torres, 445 F.3d at 54–55 (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1368 (3d ed. 2004)).  In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice."  R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006).

### III.   Factual Background

Unless otherwise indicated, the following summary is based upon the facts as alleged in the complaint.  D. 1.

Strahan alleges that Defendants have an ongoing contractual relationship with Massport, through which they are granted access to Massport's port, docking, and transportation facilities.  Id. ¶ 13.  He further alleges that through Defendants' use of these facilities, they travel through Massachusetts Bay, which is a habitat for certain endangered whales.  Id. at ¶¶ 14, 17-18.  According to Strahan, these whales "are now facing inevitable extinction" and Defendants' shipping activities "are inflicting irreparable injury" on them "by preventing the recovery of their species from its endangered status," by "striking, killing, and injuring" the whales, and by "flood[ing]" their habitat "with noise [and pollution] from the operation of" Defendants' shipping activities.  Id. at ¶¶ 16-17, 31, 36.  Strahan's complaint cites a National Oceanic and Atmospheric Administration ("NOAA") Technical Memorandum which states that shipping and fishing activity are the leading anthropogenic causes of death of the species.  Id. at ¶ 3 n.5.  Were it not for

Defendants' shipping activities, Strahan alleges that the whales "would not be struck by [their] large ships." Id. at ¶ 23.

## IV. Procedural History

On June 14, 2022, Strahan filed the complaint, D. 1, and an emergency motion for a temporary restraining order ("TRO"), D. 5. The Court denied Strahan's motion on June 28, 2022 without prejudice to filing a motion for preliminary injunction by filing and serving same on Defendants. D. 7 at 3. Strahan then served Defendants and filed a second TRO motion that was substantially the same as his initial TRO motion, compare D. 5 with D. 10, which the Court denied for failure to show a reasonable likelihood of success, D. 75. After Defendants filed their answers to the complaint, D. 49; D. 52; D. 55, they subsequently filed motions for judgment on the pleadings, D. 61; D. 62; D. 65.

## V. Discussion

### A. Standing

As a threshold matter, the Court must first determine whether Strahan has standing to pursue his claims. Article III of the United States Constitution limits federal court power to resolving "justiciable cases or controversies." Becker v. Fed. Election Comm'n, 230 F.3d 381, 384–85 (1st Cir. 2000) (citing Allen v. Wright, 468 U.S. 737, 750 (1984)). "[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Massachusetts v. U.S. Dep't of Health & Human Servs., 923 F.3d 209, 221 (1st Cir. 2019) (alteration in original) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)) (internal quotation marks omitted). Adhering to this principle requires plaintiffs to "establish that they have standing to sue." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 46 (1st Cir. 2020) (citation and internal quotation marks omitted). Standing demands plaintiffs have "a sufficiently personal

4

stake in the issue," Becker, 230 F.3d at 385, demonstrated by "(1) an injury-in-fact; (2) causation; and (3) redressability," Steir v. Girl Scouts of the USA, 383 F.3d 7, 14 (1st Cir. 2004) (citation omitted).

None of these elements are satisfied here. Strahan argues that he has standing to bring this lawsuit because of "his extended professional history of researching and developing conservation plans for species of Endangered Whales, as a commercial fisher and as a whale watcher" and because his "the protected status of these species causes his commercial lobster pot fishing to be harshly regulated." D. 1 ¶ 11. Even assuming these allegations as true, they do not confer standing.

As to the first requirement, an injury-in-fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). While the complaint rests on conclusory allegations that Defendants' operation of vessel results in takings of whales and thus injury to Strahan himself, the complaint is silent on any specific taking caused by any Defendant.[4] See generally D. 1. Indeed, Strahan's opposition to Defendants' motions reveals that his allegations are only supported by conjecture, and do not allege any actual or imminent taking. See, e.g., D. 77 at 1 (stating that "[a]lmost all of these incidents of [Defendants'] ships striking whales

---

[4] Defendants have proffered evidence that they do not own or operate ships that travel to or from Boston Harbor. D. 51 ¶¶ 4–5 (attesting that COSCO "does not own, operate, or direct the navigation or schedule rotation of any ship, including ships that may travel to or from Boston Harbor, or that may load or unload cargo in Boston Harbor"); D. 53-1 ¶ 4 (attesting that Mediterranean "does not own, operate or control vessels, including vessels that transit to or from Boston, MA"); D. 57 ¶¶ 5–6, 9 (attesting that "CCA is not a vessel owner or operator," "CCA's affiliated companies' vessels have not docked at Massport's Boston Harbor facilities since April 2021," and "[c]urrently, no CCA affiliated companies' vessels dock at Massport's Boston Harbor facilities and CCA has no current plans to direct vessels to Massport's Boston Harbor facilities"); see In re Lantus Direct Purchaser Antitrust Litig., 512 F. Supp. 3d 106, 112 (D. Mass. 2020) (noting that a district "court may consider materials outside the complaint to the extent they shed light on the jurisdictional analysis" including a claim for lack of Article III standing (citing cases)).

has gone unreported"); id. at 4 (stating that "[t]here is a reasonable likelihood that one of the Very Large Ships of the Defendants will strike one or more Right Whales").

For these same reasons, causation and redressability are not satisfied. The causation element "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm." Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (citing Lujan, 504 U.S. at 560). Without even an inference to support that Defendants own and operate ships that travel to and from Boston Harbor and are responsible for a specific taking of a whale, the direct causal connection necessary to confer standing is "overly attenuated." Donahue v. City of Boston, 304 F.3d 110, 115 (1st Cir. 2002) (citing Lujan, 504 U.S. at 560). Furthermore, the redressability element hinges on whether "a favorable decision of h[is] claim would likely redress the professed injury." Katz, 672 F.3d at 72. In other words, "[t]his means that it cannot be merely speculative that, if a court grants the requested relief, the injury will be redressed." Dantzler, Inc., 958 F.3d at 47 (citing Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 42–43 (1976)). Even if the Court granted Strahan's requested relief, his alleged injuries would not be redressed because there are no specific allegations or evidence that Defendants own or operate vessels that transit through Boston Harbor.

For all these reasons, Strahan lacks standing.

### B.      Counts I–II

Even assuming *arguendo* that Strahan has standing to pursue his claims, Strahan's ESA claims fail the plausibility standard.

Pursuant to the ESA, it is unlawful for any person to "take" any endangered species within the United States or the territorial seas of the United States. 16 U.S.C. § 1538(a)(1)(B). To "take" is defined as to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to

6

attempt to engage in any such conduct." Id. § 1532(19).  "Harm" is further defined by the ESA's implementing regulations as "an act which actually kills or injures wildlife.  Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 17.3.  To determine liability under the ESA, courts look to "[c]ommon-law principles of causation."  Man Against Xtinction v. Mass. Port Auth., No. 21-cv-10185-DJC, 2022 WL 344560, at *5 (D. Mass. Feb. 4, 2022) (citing Strahan, 127 F.3d at 163).  Accordingly, to prevail on his claims, Strahan must demonstrate (1) a "take" of one or more whales (2) proximately caused by Defendants.

      Strahan generally alleges that Defendants' shipping activities constitute a taking because it results in the striking, injuring, and killing of whales and in noise and chemical pollution, which significantly modifies and degrades these whales' habitat.  D. 1 ¶¶ 31-32.  The complaint cites to two NOAA documents, which, in Strahan's view, corroborate his allegations.  Id. at ¶¶ 3 n.5, 22 n.13.  Neither document, however, references any Defendant or any alleged shipping activity by them.  See generally *North Atlantic Right Whale (Eubalaena glacialis) Vessel Speed Rule Assessment*, NOAA Fisheries, Off. of Protected Res. (June 2020), https://media.fisheries.noaa.gov/2021-01/FINAL_NARW_Vessel_Speed_Rule_Report_Jun_2020.pdf?null (last visited May 15, 2023); Sean A. Hayes et al., *North Atlantic Right Whales – Evaluating Their Recovery Challenges in 2018*, NOAA Technical Memorandum NMFS-NE-247 (Sept. 2018), https://repository.library.noaa.gov/view/noaa/19086 (last visited May 15, 2023). These allegations are insufficient to state a claim because Strahan has alleged no particular facts of an actual or imminent taking of a whale caused by any particular vessel owned or operated by any Defendant.  Indeed, none of the examples included in the complaint allege any current injury

or death of an endangered whale from a ship, much less from a ship owned or operated by any Defendant. See, e.g., D. 1 ¶ 26 (stating only that "[a] Sei Whale was found impaled on a vessel when it docked at a Massport facility in Boston Harbor" and that "[i]n May of 2007, a Humpback Whale was struck and killed by a ship heading to Boston Harbor to use the Massport's Transportation facility"). In other words, the allegations in the complaint are conclusory and fail to specifically allege any action by Defendants. See generally id.

Strahan has, therefore, failed to state a claim, and dismissal as to Counts I and II is warranted. See Strahan v. Diodati, 755 F. Supp. 2d 318, 325 (D. Mass. 2010) (granting summary judgment for defendants where there was "no conclusive evidence that the defendants actually caused any takings" and "no evidence that takings, if any, are likely to continue in the future").[5]

## C.   Count III

Dismissal also is warranted as to Strahan's public nuisance claim, Count III. As the Court has determined that Strahan's foundational federal claims fail, it must also determine whether it otherwise retains jurisdiction over the supplemental state claim. Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) (citation omitted). This analysis will "weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation." Davila-Rivera v. Caribbean Refrescos, Inc., 150 F. App'x 3, 7 (1st Cir. 2005) (citation and internal quotation marks omitted). In making this assessment, courts consider various factors, including "the interests of fairness, judicial economy, convenience, and comity." Camelio, 137 F.3d at 672 (citation omitted). Here, as the parties have not entered discovery and none of the relevant factors counsel in favor of retaining jurisdiction, the Court

---

[5] Because it otherwise determines that Counts I and II fail to state a claim, the Court does not reach Defendants' alternative argument that Strahan failed to comply with the ESA's sixty-day notice requirement. D. 61-1 at 9–10; D. 63 at 6–7; D. 66 at 19–20; D. 83 at 4–5.

declines to exercise supplemental jurisdiction over Count III. See Saint-Gobain Ceramics & Plastics, Inc. v. Wang, No. 07-40129-FDS, 2008 WL 2756873, at *6 (D. Mass. June 27, 2008) (refusing to exercise supplemental jurisdiction over state claims because "[t]his case is at a very early stage; among other things, discovery has not yet commenced" and "concerns of 'comity, judicial economy, convenience, fairness and the like' disfavor the exercise of supplemental jurisdiction" (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996)). Accordingly, the Court declines jurisdiction over Count III and this state law claim is dismissed without prejudice.

### D. Dismissal

As to Counts I and II, the federal claims, the Court now turns to whether dismissal should be entered with or without prejudice. It is well established that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "Where, however, the Court has explained that it is dismissing a claim due to legal deficiencies or the presence of factual allegations that render the claim legally untenable, amendment would be futile. In those circumstances, the Court grants dismissal with prejudice." Cabi v. Bos. Children's Hosp., 161 F. Supp. 3d 136, 164 (D. Mass. 2016) (citing Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 327 (1st Cir. 2008)). Such is the case here. Where Defendants do not own, operate, or navigate vessels that engage in shipping activities in Boston Harbor, any proposed amendment would be futile. Accordingly, dismissal of Counts I and II is granted with prejudice.

## VI. Conclusion

For at least these reasons, the Court ALLOWS COSCO's motion, D. 61, ALLOWS CMA's motion, D. 62, and ALLOWS Mediterranean's motion, D. 65, and dismisses the complaint. Counts I and II, the federal claims, are dismissed with prejudice; Count III, the state law claim is dismissed

without prejudice as the Court declines to exercise supplemental jurisdiction over it given the dismissal of Counts I and II.[6]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[6] In light of this ruling, the Court DENIES as moot Strahan's motion for a preliminary injunction. D. 79. Furthermore, to the extent Strahan attempts in his opposition to expand the complaint to include new defendants and new relief—namely, requesting a permanent injunction enjoining any vessel operated by any Defendant or any "corporate subsidiary or affiliates" from (1) "crossing Right Whale Critical Habitat and docking in Boston Harbor during February - May 2023 and in any subsequent year," or (2) operating any very large ship "in US Atlantic coastal waters" beginning in 2028 without an ESA Section 10 incidental take permit—those requests are DENIED. D. 77 at 2; Capers v. Kirby Forensic Psychiatric Ctr., No. 13-cv-6953 (AJN), 2016 WL 817452, at *2 (S.D.N.Y. Feb. 25, 2016) (stating that plaintiff's "attempt to add . . . a defendant" in his opposition, "it cannot succeed" because "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss" (citation and internal quotation marks omitted)); CCS Res., Inc. v. Noble Sys. Corp., No. 12-11156-RWZ, 2014 WL 12914395, at *9 (D. Mass. Jan. 27, 2014) (noting that a "request" for relief included in an opposition "is not in the proper form of a motion").